SINGER, Appellant, vs. SINGER, Respondent.

*February 15—April 14, 1944.*

For the appellant there was a brief by *Rubin, Zabel & Ruppa,* attorneys, and *Wm. B. Rubin* of counsel, and oral argument by *Mr. Rubin.*

For the respondent there was a brief by *Dougherty, Arnold & Kivett,* attorneys, and *Alfred E. Fein* of counsel, all of Milwaukee, and oral argument by *Mr. Fein.*

ROSENBERRY, C. J.   The complaint alleges that the plaintiff is the wife of the defendant, Anthony A. Singer; that the defendants, Anthony A. Singer and Max Singer, are brothers jointly engaged in various business enterprises; that the defendant, Catherine Fuerstenberg, is an office employee of the other defendants.   It is then alleged that the plaintiff and de-

fendant, Anthony A. Singer, were living together as husband and wife, enjoying each other's confidence, until the defendant, Catherine Fuerstenberg, practiced her wiles upon the husband and carnally associated with him as plaintiff is informed and verily believes, and thereby alienated his affections from the plaintiff.

That on or about the 1st day of June, 1939, the plaintiff discovered the illicit and clandestine relations between her husband and Catherine Fuerstenberg. Thereafter the three defendants entered into an unlawful conspiracy *to wilfully and wickedly terminate the marriage contract and relations between the plaintiff and her husband, and by various means of artifice and coercion for plaintiff to bring an action for divorce against the defendant Anthony A. Singer, so that he might be free to marry Catherine Fuerstenberg.*

That the following overt acts are alleged:

## "IV.

"(1) Defendant Anthony A. Singer, with the knowledge and consent of and urged by his codefendants, did, on numerous occasions, beg the plaintiff to institute an action for and obtain a divorce;

"(2) That defendant Max Singer, on occasions, after the 1st day of June, 1939, and prior to the commencement of this action, wilfully and wrongfully urged her and advised her to sue Anthony A. Singer for divorce;

"(3) That defendant Catherine Fuerstenberg did, on numerous occasions, prior to the commencement of this action, enter the home of the plaintiff without her consent and permission, and by the direction of defendant Anthony A. Singer compelled the plaintiff to wait on her as her servant, much to the plaintiff's discomfort and unhappiness;

"(4) That the defendant Anthony A. Singer, with the knowledge and approval of the other defendants, set up the defendant Catherine Fuerstenberg in her present home, lavished and still does lavish on her various expenditures, and for the last two years and more has stayed away from home the greater part of every night, and on information and belief

alleges spending his time with defendant Catherine Fuerstenberg, and the defendant Catherine Fuerstenberg, taking delight in taunting and aggravating the plaintiff by reason of her husband's conduct toward her;

"(5) That defendant Anthony A. Singer, on numerous occasions since June 1, 1939, in the presence of the children, did call plaintiff vile names and wrongfully accused her of infidelity, and on information and belief alleges the same was done with the knowledge and approval of the other defendants;

"(6) That on numerous occasions since the 1st day of June, 1939, defendant Anthony A. Singer has beaten her up, inflicting bodily injuries;

"(7) That the defendant Catherine Fuerstenberg has charge of the management of defendant Anthony A. Singer's financial affairs, and she caused the defendant Anthony A. Singer to provide the plaintiff with only the bare necessities, refusing to buy her clothing, keeping her in a constant state of beggary;

"(8) That on the 26th day of June, 1943, defendant Anthony A. Singer and Max Singer did unlawfully assault, beat and hit the plaintiff in the face, mouth and nose, causing her severe damage to her person and great pain of body and mind, and on information and belief alleges same was done with the knowledge of defendant Catherine Fuerstenberg;

"(9) That since the 1st day of June, 1939, large sums of money were spent by the defendants for the medical care and operations upon the defendant Catherine Fuerstenberg;

"(10) Plaintiff alleges on information and belief that defendants have, on numerous occasions, spread false rumors concerning the plaintiff, claiming that she was suffering from mental ailment and should be removed to an insane asylum, and defendant Anthony A. Singer threatened to have her committed unless she obtained a divorce;

"(11) That on public occasions defendant Anthony A. Singer would force the plaintiff to witness his attentions to defendant Catherine Fuerstenberg, all aided and abetted by defendant Max Singer.

"V.

"That by reason of the premises the plaintiff has suffered damage in the amount of $25,000."

The defendant husband demurred to the complaint on the sole ground that it did not state facts sufficient to state a cause of action as to him. The trial court said:

"The mere enumeration of these claimed 'overt acts' demonstrates the narrow scope of the actual cause of action as one for an unlawful conspiracy for the alienation and loss of the affection and society of plaintiff's husband."

It is considered that the cause of action stated is not one for the alienation of the affections of the husband. At the time this action arose, according to the allegations of the complaint, the affections of the defendant husband had previously been alienated. From the complaint it appears that thereafter the defendants entered into the conspiracy. The overt acts alleged were according to the allegations of the complaint committed by the several defendants pursuant to the conspiracy to harass, annoy, and abuse the plaintiff in order to compel her for her own peace of mind to bring an action for divorce so that the defendant husband and Catherine Fuerstenberg might marry.

The question for decision is, Can the action be maintained by a wife against her husband? This requires us to consider briefly the nature of a so-called action for conspiracy. It is the established law of this state that there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a conspiracy but none for the conspiracy alone. In a civil action for damages for an executed conspiracy, the gist of the action is the damages. The combination is of no consequence except as bearing upon admissibility of evidence. *Jones v. Monson* (1909), 137 Wis. 478, 485, 119 N. W. 179; *Milwaukee v. Drew* (1936), 220 Wis. 511, 525, 265 N. W. 683.

It is quite generally held that an allegation that the defendants conspired is necessary in order to subject to liability those defendants who did not directly participate in the commission

of the overt acts, but it is also held that no allegation of conspiracy need be made in the pleadings to entitle it to be proved. *Judevine v. Benzies-Montanye Fuel & Whse. Co.* (1936) 222 Wis. 512, 269 N. W. 295; *Herron v. Hughes* (1864), 25 Cal. 555; 12 C. J. p. 630, note 5 and cases cited. See also *Columbia Bank of Lodi v. Markgraf* (1928), 195 Wis. 472, 476, 218 N. W. 712, where the court held:

"It was not even necessary, perhaps, to state upon information and belief that the defendant and his brother conspired to defraud the bank. That conclusion could legitimately be drawn from the facts pleaded."

While it is not absolutely required that it be alleged in the complaint that the acts complained of were done pursuant to a conspiracy, it is undoubtedly the better practice to insert such an allegation. It is an established rule of pleading in this state, sec. 263.07, Stats., that in an attack by general demurrer, if a complaint states any cause of action, the demurrer must be overruled.

The question then arises, Can the plaintiff maintain an action for any or all of the specific wrongs alleged by her to have been committed pursuant to the conspiracy? The defendant husband contends that even if the complaint in form states a cause of action against him, the action cannot be maintained by the wife against the husband under the provisions of our Married Women's Act, ch. 246, Stats., as enlarged by sec. 6.015, Stats. This question was considered in *Wait v. Pierce* (1926), 191 Wis. 202, 209 N. W. 475, 210 N. W. 822. In that case, after full consideration, it was held that the plaintiff could maintain an action against her husband for injuries sustained in an automobile accident by reason of the husband's negligence. However, in that case, there was no reason for considering the limitations of that rule because the injury there complained of was clearly within the statute. Sec. 246.07 provides:

"Every married woman may sue in her own name and shall have all the remedies of an unmarried woman in regard to her separate property or business and to recover the earnings secured to her by sections 246.05 and 246.06, and shall be liable to be sued in respect to her separate property or business, and judgment may be rendered against her and be enforced against her and her separate property in all respects as if she were unmarried. And any married woman may bring and maintain an action in her own name *for any injury to her person or character the same as if she were sole. . . .*"

This section, which has been upon the statute books for many years, limits a wife's right to maintain an action in her own name to injuries to her person or character. Nor is this provision of the statute enlarged by sec. 6.015, (1), Stats., which provides:

"Women shall have the same rights and privileges under the law as men in the exercise of suffrage, freedom of contract, choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, *and in all other respects. . . .*"

However, there is no provision in our statutes which authorizes a husband to maintain an action for a wrong done him by his wife. In that respect her rights are superior to his. It is to be noted that while sec. 246.07, Stats., authorizes a married woman to maintain an action for any injury done her person or character, the same as if she were sole, and therefore authorizes her to maintain such an action against her husband as was held in *Wait v. Pierce, supra,* the statute does not say that she may be sued the same as if she were sole. While no doubt third parties may maintain an action against a married woman for torts committed by her, her husband may not do so.

Turning now to the complaint, we find an allegation to the effect that the defendant on numerous occasions since June 1, 1939, in the presence of the children, did call the plaintiff vile

names and wrongfully accused her of infidelity. This would seem to be slanderous and an injury to her character. By the sixth paragraph it is alleged that the defendant has beaten the plaintiff, inflicting bodily injuries upon her. By the eighth paragraph it appears that the defendant and his brother Max unlawfully assaulted and beat the plaintiff, causing her severe bodily injuries. By paragraph ten it is alleged on information and belief, that the defendants have on numerous occasions spread false rumors concerning the plaintiff, claiming that she was suffering from mental ailment and should be removed to an insane asylum and that threats had been made to have her committed. While the allegation is very general, and might be subject to a motion to make more definite and certain, it would admit proof of slanderous statements which are injurious to her character. For these wrongs she may maintain an action against the defendant, and if it is shown upon the trial that the acts complained of were committed pursuant to a conspiracy on the part of the defendants, the defendants will be jointly and severally liable. The plaintiff cannot maintain an action against her husband for wrongs done to her other than those which result in injuries to her person or her character; therefore she cannot maintain an action against her husband as a conspirator to commit such wrongs in concert with others. See *White v. White,* 140 Wis. 538, 122 N. W. 1051.

It is evident that the complaint was framed on the theory that the plaintiff might maintain an action for conspiracy and the so-called overt acts were set out by way of inducement or to enhance the damages. Inasmuch as the statute does not authorize a married woman to maintain an action in her own name for injuries other than those to her person or her character, and for the alienation and the loss of the affection and society of her husband, she could not maintain such an action against her husband if one existed without joining her husband. It is manifest that he could not be both plaintiff and

defendant in the same action. Here the .conspiracy was to injure the plaintiff in her marital rights. The statute does not authorize her to maintain such an action in her own name. If, in the course of carrying out the plan of the defendants, they committed acts on account of which the plaintiff could maintain an action against her husband, damages for such acts and such acts only may be recovered in this action.

Under the statutory rule we must hold that the complaint states a cause of action, and the order sustaining the demurrer must be reversed.

*By the Court.*—The order appealed from is reversed, and the record remanded to the trial court for further proceedings according to law.