COMMUNICATIONS WORKERS OF
AMERICA, AFL–CIO, et al.

v.

SOUTH CENTRAL BELL TELEPHONE
AND TELEGRAPH COMPANY.

Betty M. DUBOSE

v.

SOUTH CENTRAL BELL TELEPHONE
AND TELEGRAPH COMPANY.

Civ. A. Nos. 73–1771, 76–3206.

United States District Court,
E. D. Louisiana.

April 1, 1981.

Bernard Keith Vetter, Arthur A. Lemann, New Orleans, La., for plaintiffs in case no. 73–1771.

Joseph W. Thomas, Thomas & Davis, New Orleans, La., for plaintiff in case no. 76–3206.

George W. Byrne, Jr., New Orleans, La., for defendant.

## REASONS

ROBERT F. COLLINS, District Judge.

This matter is before the Court on cross motions for summary judgment in two consolidated actions. In Civil Action No. 73–1771, (hereinafter *Wilhite*), a class action suit, the Communication Workers of America, AFL–CIO, and Harriet Wilhite have filed a motion for summary judgment against defendant, South Central Bell Telephone and Telegraph Company (hereinafter Bell). In Civil Action No. 76–3206 (hereinafter *Dubose*), Betty Dubose has likewise filed a motion for summary judgment against the same defendant, Bell. Bell has opposed both of these motions and has filed its own motion for summary judgment, seeking the dismissal of these consolidated actions.

In *Wilhite*, plaintiff union filed a sworn, written complaint with the Equal Employment Opportunities Commission on April 12, 1972. This complaint alleged violations by defendant of Title VII of the Civil Rights Act of 1964. On April 23, 1973, plaintiff union was notified by the Commission that an actionable claim existed, and the Commission issued a right to sue letter. Accordingly, plaintiff union, joined by Harriet Wilhite, a female employee of defendant, individually and on behalf of all Bell's similarly situated non-supervisory female employees, filed a complaint on July 3, 1973. This suit was timely commenced in the United States District Court for the Eastern District of Louisiana. On June 10, 1975, it was ordered that the action be stayed, pending a decision by the Supreme Court in a similar case.

On October 21, 1976, a class was certified in *Wilhite* by the then District Judge, Alvin Rubin, consisting of "all female non-supervisory employees of South Central Bell who allegedly suffered as a result of defendant's benefit plan during a pregnancy-related absence which, at least in part, occurred on or after October 13, 1971." Subsequently, defendant also filed a motion for summary judgment, asking that plaintiff's entire complaint be dismissed.

On October 15, 1976, a similar complaint was filed in this district against the same defendant. The plaintiff, Betty Dubose, was also a female employee of Bell. After filing charges of sex discrimination in employment practices with the Equal Employment Opportunity Commission, Dubose received a right to sue letter, which prompted her suit. Although this suit was also filed as a class action, plaintiff never petitioned the Court to have the class certified. Consequently, the Court has treated Dubose as an individual plaintiff, not a class representative.

On January 31, 1977, defendant's motion to consolidate these two actions was granted. Subsequently, on March 10, 1977, this Court granted a partial summary judgment to defendant on one of plaintiffs' allegations. In all other respects, this motion was denied. Since that time, pursuant to recent jurisprudence involving the issues at bar, each of the plaintiffs have filed motions for summary judgment on their respective allegations. Likewise, defendant has again filed a cross motion for summary judgment seeking the dismissal of all claims asserted by plaintiffs.

Plaintiffs in the two suits are seeking similar relief: that defendant be permanently enjoined from abridging the rights of its female employees through sexually discriminatory employment policies and practices; that plaintiffs, and the persons represented, be accorded the same options as those made available to other sick or disabled employees; that plaintiffs and others adversely affected by these policies be compensated in the nature of appropriate back pay and other benefits forfeited as a result of the unlawful employment practices, including reimbursement for attorneys' fees and other costs; and that an affirmative action program be established to eliminate the effects of past discrimina-

tory employment practices. This relief is sought pursuant to plaintiffs' motions for summary judgment on the grounds that no genuine issues of material fact exist, and plaintiffs are entitled to judgment as a matter of law. Fed.R.Civ.P. 56 places the burden of showing the absence of material factual issues on the moving party. Once this burden has been met, the Court may render judgment as a matter of law, based on the undisputed facts. *Doza v. American National Insurance Company*, 314 F.2d 230 (8th Cir. 1963); Fed.R.Civ.P. 56. The legal issue to be decided is whether provisions of Bell's Employee Benefits Plan and maternity leave program violate the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Employee Benefits Plan, which is the subject matter of this cause, was in effect from October 13, 1971 until August 7, 1977. The material facts in these two cases, relevant to the issues presented to the Court for decision, are not in dispute. Therefore, since these motions present questions of law rather than fact, summary judgment may be properly rendered in the two cases at bar.

The following material facts have been summarized for the Court and agreed to by all parties. In *Dubose*, plaintiff was hired by defendant Bell on February 1, 1972 as a telephone operator. On January 31, 1975, she was granted a six month maternity leave of absence through July 30, 1975. Plaintiff returned to work on April 28, 1975. During her leave of absence, plaintiff accrued only thirty additional days of service credit for seniority purposes. During the other fifty-four days of her absence, plaintiff accumulated no service credit.

Defendant does not include pregnancy-related absences in the coverage provided by its Employee Benefits Plan (the Plan). The Plan is a non-occupational sickness and accident benefits plan for all of its employees, male and female, who have been employed by Bell for a minimum of six months. During the period in question, October 13, 1971 through August 7, 1977, any absence due to a "normal" pregnancy was not included in the Plan's coverage. A leave of absence for a normal pregnancy refers solely to the amount of time necessary for actual physical childbirth and recovery. Only if physical complications in a pregnancy occurred, either before maternity leave began or after it ended, would any coverage be provided under the Plan for that period of time. Whereas sick or disabled employees received full seniority credit while on leave, up to fifty-two weeks, female employees absent because of a normal pregnancy accrued only thirty additional days of service credit. All other employees, whether on personal leave of absence or disability leave under the Plan, retained all previously accrued seniority. In *Dubose*, plaintiff alleges that defendant violated § 703(a)(2) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by not extending to female employees returning from pregnancy-related leaves of absence the same service credit which it extends to employees returning from other temporary disabilities.

In *Wilhite*, plaintiff was employed by Bell as a repair clerk on June 16, 1971. On March 13, 1972, plaintiff requested a leave of absence for maternity reasons. Pursuant to the provisions of the Plan, this leave of absence was considered a personal leave of absence and did not qualify as a temporary disability. Plaintiff was not guaranteed reinstatement to the same or equal position at the expiration of her leave of absence. As any other employee on unpaid personal leave of absence, a female employee on maternity leave was not guaranteed reinstatement to the same or equal position upon returning to work after a normal pregnancy. Under the Plan, any sick or disabled employee qualifying for coverage had mandatory reinstatement rights to the same position upon returning to work. In *Wilhite*, plaintiff alleges that Bell violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(2), by not providing mandatory reinstatement rights to the same or an equal job position for female employees returning from maternity leave for a normal pregnancy, as Bell did for other temporarily disabled employees.

In *Dubose*, the question the Court must decide is whether denial of full senior-

ity credit to female employees on maternity leave for a normal pregnancy, when compared with defendant's treatment of other temporarily disabled employees, violates § 703(a)(2) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(2). This is not a novel issue. The Supreme Court passed upon a similar question in *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977) (*Satty*). In *Satty*, the employer's maternity leave policy denied all previously accumulated seniority to female employees returning from such a pregnancy-related leave of absence. Female employees claimed that this practice violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(2), which states:

> It shall be an unlawful employment practice for an employer to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(2).

In *Satty*, the Supreme Court first examined the challenged employment policy to determine if it was facially neutral. Finding no discrimination on the face of the policy, the Supreme Court further scrutinized the plan for a discriminatory effect. The Supreme Court had previously recognized in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), that an employment policy could violate 42 U.S.C. § 2000e *et seq.* if it had a discriminatory effect, even though it did not intentionally discriminate against female employees. To determine the prejudicial effect of the policy against female employees, the Supreme Court in *Satty* applied a benefits versus burdens analysis. This involved determining whether the policy in question provided an additional benefit to female employees not extended to male employees, or whether the policy placed an unreasonable burden on those female employees because of their different role. Only if an unfair burden was found to exist, could the policy be construed as a violation of 42 U.S.C. § 2000e–2(a)(2). However, if the Court found that the policy had a discriminatory impact upon female employees, the Court held that the policy may still be construed as lawful if proof of a business necessity was established. The Supreme Court in *Satty* stated:

> If a Company's business necessitates the adoption of particular leave policies, Title VII does not prohibit the Company from applying these policies to all leaves of absence, including pregnancy leaves; Title VII is not violated even though the policies may burden female employees. *Satty*, 434 U.S. at 143, 98 S.Ct. at 352.

In *Satty*, the Supreme Court applied the benefit/burden test and ultimately held that the employer's seniority policy was an unfair burden on female employees:

> Here, by comparison, petitioner has not merely refused to extend to women a benefit that men cannot and do not receive, but has imposed on women a substantial burden that men need not suffer. The distinction between benefits and burdens is more than one of semantics. We held in [*General Electric Co. v.*] *Gilbert* [429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343] that § 703(a)(1) did not require that greater economic benefits be paid to one sex or the other "because of their differing roles in 'the scheme of human existence,'" 429 U.S. at 139, 97 S.Ct. at 410 n. 17. But that holding does not allow us to read § 703(a)(2) to permit an employer to burden female employees in such a way as to deprive them of employment opportunities because of their different role. *Satty*, 434 U.S. at 142, 98 S.Ct. at 351.

The Supreme Court also found insufficient proof of any business justification for the policy. For these reasons, the Court held that policy at issue in *Satty* violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(2).

In a recent case, *In Re Southwestern Bell Telephone Co. Maternity Benefits Litigation, et al. v. Southwestern Bell Telephone Company*, 602 F.2d 845 (8th Cir. 1979)

(*Southwestern Bell*), the Eighth Circuit Court of Appeals reviewed a seniority policy virtually indistinguishable from the policy at bar. In *Southwestern Bell*, the district court held that an employer's policy of granting employees on disability leave full seniority credit during their absences, up to fifty-two weeks, while granting female employees on maternity leave a maximum of thirty additional days of service credit, did not unlawfully discriminate against female employees. The Eighth Circuit affirmed the district court's decision pursuant to the *Satty* rationale:

> Here the record shows that Bell, unlike the employer in *Satty*, does not divest employees on maternity leave of seniority accumulated prior to taking leave. Moreover, Bell does grant some seniority credit to women on maternity leave, presumably to cover the period of childbirth and recovery. We cannot say that Bell's policy of granting female employees on maternity leave up to the former maximum of thirty days or the present maximum of forty-two days seniority for the period of their absence constitutes a burden on women that 'deprives them of employment opportunities because of their different role.'
>
> *Nashville Gas Co. v. Satty, supra,* 434 U.S. at 142, 98 S.Ct. at 351.

*Southwestern Bell,* 602 F.2d at 848.

Another case relied on by the Eighth Circuit in *Southwestern Bell* was *Harriss v. Pan American Airways,* 441 F.Supp. 881 (N.D.Cal.1977) (*Harriss*). In that case, an employment policy allowed employees on maternity leave of absence to retain all their accumulated service credit and merely precluded them, after the first ninety days, from accumulating additional seniority. This Court agrees with the underlying rationale of the California district court.

> In the common understanding of the industrial world, seniority is earned for work done. Denying seniority for time during which an employee is not working cannot be regarded as the imposition of a burden. It is more akin to the denial of a benefit which, under the *Gilbert* analysis as applied to the facts of this case, does not run afoul of Title VII. *Gilbert* "did not require that greater economic benefits be paid to one sex or the other 'because of their different roles in the scheme of existence.' "

*Harriss,* 441 F.Supp. at 883.

In the instant case, plaintiff relies on the following jurisprudence: *deLaurier v. San Diego Unified School District,* 588 F.2d 674 (9th Cir. 1978) (*deLaurier*); *Greenspan v. Automobile Club of Michigan,* 495 F.Supp. 1021, 22 F.E.P. Cases 184 (E.D.Mich.1980) (*Greenspan*). In both cases, the employer's policy prohibited pregnant employees from utilizing accrued sick leave or vacation time for maternity leave. Unlike the instant case, where plaintiff is seeking credit for time in which she will not be working, plaintiffs in *deLaurier* and *Greenspan* were being denied benefits they had already earned.

It is the conclusion of this Court that South Central Bell's Employee Benefits Plan does not unlawfully discriminate against female employees in violation of 42 U.S.C. § 2000e–2(a)(2), by not granting females on maternity leave full seniority credit while absent. Defendant's policy of extending full seniority credit under the Employee Benefits Plan to sick or disabled employees, up to fifty-two weeks, and only allowing female employees on maternity leave to accrue thirty additional days of service is not a burden to female employees, and, therefore, does not constitute any gender-based discrimination. Accordingly, the motion of plaintiff Dubose for summary judgment is DENIED. Pursuant to the holding of the Eighth Circuit Court of Appeals in *Southwestern Bell,* the motion of defendant, South Central Bell Telephone and Telegraph Company, for summary judgment in *Dubose,* on the issue of seniority, is GRANTED.

■ In *Wilhite,* the issue this Court must resolve is whether the disparity in treatment, between employees on disability leave under the Plan and female employees on maternity leave, imposes upon female employees an unreasonable burden under 42

U.S.C. § 2000e–2(a)(2). The district court in *Southwestern Bell* also considered this issue. Based upon a virtually identical reinstatement plan as in the instant case, the Missouri district court in *Southwestern Bell* held that a program which denied guaranteed reinstatement to female employees returning to work immediately after actual physical pregnancy-related disability, while guaranteeing prior job reinstatement to employees returning from other non-occupational illness or injury, did not unlawfully discriminate against female employees. The Eighth Circuit Court of Appeals reversed the district court decision in *Southwestern Bell*. Pursuant to the same analysis applied in *Satty*, the Eighth Circuit concluded that the policy did "adversely affect the status of its female employees because of their sex." *Southwestern Bell,* 602 F.2d at 849. In remanding the case for further proceedings consistent with their opinion, the Eighth Circuit stated:

> On its face, Bell's leave policy relating to reinstatement appears to be neutral in its treatment of male and female employees. An employee returning from disability leave—leave for non-occupational illness or injury other than pregnancy—whether male or female, is guaranteed reinstatement to the job position held prior to the leave. Employees returning from leaves of absence, including maternity leaves, must apply for reinstatement, must await a job vacancy, face the possibility of reemployment in a different, perhaps less preferred, job, and may lose employment altogether. Although Bell treats all leaves of absence, including maternity leave, returnees the same, and similarly does not discriminate *among* disability leave returnees, Bell's reemployment policy treats female employees returning from maternity leave less favorably than employees back from disability leave. Such a policy impermissibly deprives female employees of employment opportunities because of their different role. *See Nashville Gas Co. v. Satty, supra,* 434 U.S. at 142, 98 S.Ct. at 351.

*Southwestern Bell,* 602 F.2d at 849.

Instant defendant contends that its reinstatement policy was not a burden to its female employees. In support of this contention, defendant cites *General Electric Company v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (*Gilbert*). The Supreme Court in *Gilbert* found that an employer's disability benefits plan did not violate Title VII merely because it excluded pregnancy related disabilities from the plan's coverage. The Court held that the mere exclusion of pregnancy disability benefits did not violate Title VII, absent proof that the exclusion was a pretext for gender-based discrimination. Since all persons in *Gilbert* qualifying under the Employee Benefits Plan, both male and female, were granted paid leaves of absence for non-occupational illness or injury, the granting of wage continuation to female employees, not qualifying under the Plan, was considered the extension of an additional benefit to female employees. According to *Gilbert,* it is not necessary to extend any additional benefits to a particular class of employees. In *Satty,* the Supreme Court further clarified the benefits versus burdens analysis. The Court explained that the activity complained of must be analyzed to determine whether the activity constitutes a burden which deprives the class of employment opportunities based on this classification, or instead results in extending an advantage to the class which other employees do not share. Whereas, the activity complained of in *Gilbert* provided a benefit, the Supreme Court held that the activity complained of in *Satty* was a burden. Likewise, the Eighth Circuit in *Southwestern Bell* held that a burden or deprivation existed where female employees were not guaranteed reinstatement to the same or equal positions upon returning from maternity leave.

On the basis of the undisputed facts in *Wilhite* and the factual and legal similarities between *Wilhite* and *Southwestern Bell,* the Court holds that the Eighth Circuit Court of Appeals decision in *Southwestern Bell* is fully applicable to *Wilhite.* The jurisprudence does not support defendant's contentions that a benefit is being extended, as indicated in the Eighth Circuit's dispositive ruling on a virtually identical benefits plan.

**246**

However, pursuant to *Satty*, the determination that a burden exists does not end this Court's inquiry. If defendant establishes the existence of a business justification for the reinstatement policy at issue, defendant's policy does not constitute a violation of Title VII. 42 U.S.C. § 2000e–2(e) permits sex-based discrimination only where there exists a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." The Supreme Court, in interpreting this provision, stated that 42 U.S.C. § 2000e–2(e) "was in fact meant to be an extremely narrow exception to the general prohibition of discrimination on the basis of sex." *Dothard v. Rawlinson*, 433 U.S. 321, 335, 97 S.Ct. 2720, 2729–30, 53 L.Ed.2d 786 (1977). The Fifth Circuit Court of Appeals described this test as a business "necessity" test and not a business "convenience" test; only if "the essence of the business operation would be undermined" by disallowing the gender-based discrimination, would a valid business justification exist. *Diaz v. Pan-American World Airways*, 442 F.2d 385, 388 (5th Cir. 1971). Defendant alleges that a sound business basis does exist for their reinstatement policy. Defendant contends that under the Plan, an employer has a larger investment in an employee on a paid leave of absence, than an employer has in an employee on personal leave of absence without pay. Bell concludes that it has a stronger interest in getting the employee on paid disability leave back to productive work.

The defendant's greater economic interest in paid employees on sickness disability leave is a result of its own classification, which excludes employees on pregnancy leave from a "benefit" extended to other employees. It is irrational to expect this Court to permit the effects of extending a benefit to one group of employees to stand as a proper business justification for placing a burden on another group. By extending wage continuation during sick leave to employees covered by the sickness disability plan, defendant has increased its financial investment in those employees. Because the extension of wage continuation to employees covered by the sickness disability plan is an arbitrary benefit to sick or disabled employees, it would be inconsistent to consider the effects of such a benefit as a viable reason to deny female employees on pregnancy related personal leave guaranteed reinstatement to their former or equal positions. The denial of guaranteed reinstatement to female employees on pregnancy related personal leave cannot be justified as necessary for the continued successful operation of the business. Despite the possibility of some minor inconvenience to the defendant, Bell has not established a real business necessity for its reinstatement policy. There is no reason to believe that defendant's business operation will be undermined by a policy which guarantees reinstatement to women on normal pregnancy leave. It is the Court's opinion that the undisputed business justification expressed by defendant is not substantial enough to warrant the burden imposed on female employees.

For these reasons, the Court holds that defendant's reinstatement policy unlawfully violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(2). Therefore, the motion of South Central Bell Telephone Company for summary judgment on this issue is DENIED. The motion of plaintiff in *Wilhite* for summary judgment is hereby GRANTED.